FILED
2017 Mar-16  AM 08:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER RENA YORK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 5:15-cv-01457-TMP |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, *Commissioner*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

The plaintiff, Jennifer Rena York, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI").  The plaintiff timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 9).

The plaintiff was 35 years old on the date her application was filed.  (Tr. at 29).  Her past work experience includes employment as a cosmetologist.  (*Id.*)  The plaintiff claims that she stopped working on January 23, 2009, due to anxiety, depression, bipolar disorder, neck injury, knee injury, and anemia.  (Tr. at 142).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If she is, the claimant is not disabled and the evaluation stops.  (*Id.*)  If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  (*Id.*)  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. (*Id.*) If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. (*Id.*) If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. (*Id.*) Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. (*Id.*) The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove her inability to

perform those jobs in order to be found disabled.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that the plaintiff has not engaged in substantial gainful activity since August 30, 2012, her application date.  (Tr. at 22).  According to the ALJ, the plaintiff suffers from degenerative disc disease of the cervical spine and panic attacks, both of which are considered "severe" based on the requirements set forth in the regulations.  (*Id.*)  The ALJ also determined that the plaintiff has the non-severe impairments of depression, knee strain, and residual arthrofibrosis.  (Tr. at 23).  She determined that the plaintiff's impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. at 24).  The ALJ did not find the plaintiff's allegations regarding pain and the disabling nature of her impairments to be entirely credible (Tr. at 26), and she determined that the plaintiff has the residual functional capacity to:

> Perform light work as defined in 20 CFR 416.967(b).  The claimant is able to lift or carry up to 20 pounds occasionally, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  However, the claimant requires a sit/stand option on the half hour.  The claimant is able to balance, stoop, kneel, crouch, crawl, and climb occasionally.  The claimant can reach out or up occasionally.  The claimant is able to perform work that does not require close cooperation or interactions with coworkers or the general public.  The claimant is able to perform work that does not demand

close supervision. The claimant needs work that does not require looking up.

(Tr. at 25).

According to the ALJ, the plaintiff is unable to perform any of her past relevant work. (Tr. at 29). The plaintiff is a "younger individual" and has "at least a high school education,"[1] as those terms are defined by the regulations. (*Id.*) The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) The ALJ found that the plaintiff has the residual functional capacity to perform a significant range of light work. (Tr. at 30). Even though the plaintiff cannot perform the full range of light work, the ALJ determined that there are a significant number of jobs in the national economy that she is capable of performing, such as garment folder, production inspector, and assembler. (Tr. at 29, 30). The ALJ concluded her findings by stating that the plaintiff "has not been under a disability, as defined in the Social Security Act, since August 30, 2012, the date the application was filed (20 CFR 416.920(g))." (*Id.*)

---

[1] In fact, the record indicates that she has two years of college education.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for

review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."   20 C.F.R. §§ 404.1527(e), 416.927(d).   Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

The plaintiff argues that the Commissioner's decision should be overturned for two reasons.  First, she argues that the Appeals Council failed to properly address or consider new evidence with which it was presented.  Second, she argues that the ALJ erred in refusing to give great weight to the clinical assessment of pain completed by Dr. Hood, her treating physician.  The court will first address the question of whether the Appeals Council erred in its treatment of new evidence and, then, if the court determines that it did not, the court will address the ALJ's determination regarding Dr. Hood's opinion as a treating physician.

### A. Appeals Council Consideration

The plaintiff does not set apart the decision of the Appeals Council as a separate argument.  However, she does address at length in her brief the treatment by the Appeals Council of her newly presented evidence.  Therefore, the court construes the brief to argue that the decision of the Appeals Council should be overturned because it improperly dismissed the newly submitted evidence.

In its denial of the plaintiff's request for review, the Appeals Council stated that "we considered . . . the additional evidence listed on the enclosed Order of Appeals Council. . . . We found that this information does not provide a basis for changing the Administrative Law Judge's decision."  (Tr. at 2).  The plaintiff

contends in her brief that "the Appeals Council chose not to address the missing records which played significance [sic] in the ALJ's denial." (Doc. 11, p. 8).

The plaintiff's complaint that the Appeals Council failed to address the new evidence may be resolved using the same analysis that was used in the recent Eleventh Circuit opinion, *Mitchell v. Commissioner, Social Security Administration*, 771 F.3d 780 (11th Cir. 2014). As in the instant case, the Appeals Council in *Mitchell* "denied [the claimant's] request for review, explaining that it had considered [his] reasons for disagreeing with the ALJ's decision as well as his additional evidence," and determined that the new evidence did not provide a basis for changing the ALJ's decision. *Id.* at 782. Also similarly to the instant case, the Appeals Council in *Mitchell* did not engage in a discussion of the new evidence. *Id.* The Eleventh Circuit held that "the Appeals Council is not required to explain its rationale for denying a request for review. . ." *Id.* at 784. This court has no reason to second-guess the assertion by the Appeals Council that it considered the new evidence offered by the plaintiff, but simply found it lacking as a basis for overturning the ALJ's determination. Accordingly, to the extent the plaintiff intends to argue in her brief that her case should be remanded for this reason, the argument is without merit.

The new evidence under consideration by the Appeals Council was a set of medical records from Dr. Hood, the plaintiff's treating physician. The medical records contained treatment notes from the plaintiff's 2013 and 2014 visits to Dr. Hood, which had not been previously provided to the ALJ. Therefore, these additional records do serve to negate the ALJ's assertion that, according to the record before her, the plaintiff failed to seek continuous treatment for her pain. The records establish that plaintiff continued to seek medical care for the year just prior to the ALJ's hearing.[2] The plaintiff contends that the second set of records should have prompted the Appeals Council to remand the case to the ALJ for further consideration. However, the court finds that the newly presented evidence does not provide a basis for changing the conclusion reached by the ALJ and, therefore, referral back to the ALJ was unnecessary.

"The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1261 (11th Cir. 2007), 20 C.F.R. § 404.900(b). Had the ALJ's decision to give little weight to Dr. Hood's clinical assessment of pain been based solely on the lack of

---

[2]  Of course, the ALJ could not have known this as the records were not submitted to her at the time of the hearing.

medical records from 2012 to the date of her decision, the introduction of new records may have been sufficient to warrant remand by the Appeals Council. However, the ALJ specifically stated in her decision that, in addition to the lack of records, "[Dr. Hood's] opinion is not supported by the medical evidence of record, including his own treatment notes . . . ." (Tr. at 28). The 2013 and 2014 medical records, the contents of which are set out more fully *infra*, do not indicate any change in the plaintiff's condition that would render the ALJ's determination with regard to Dr. Hood's opinion erroneous. Therefore, the Appeals Council's decision not to remand the case for further consideration was appropriate.

### B. Treating Physician's Diagnoses

The plaintiff contends that the ALJ improperly evaluated the opinion of Dr. Hood, her treating physician. (Doc. 11, p. 6). A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion,

how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).  The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's

findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity.  *See, e.g.,* 20 C.F.R. § 404.1546(c).

The plaintiff argues that the ALJ's determination was not supported by substantial evidence because the ALJ did not accord adequate weight to Dr. Hood's Clinical Assessment of Pain opinion (Tr. at 414) dated November 7, 2013, regarding the incapacitating nature of the plaintiff's pain.  In her decision, the ALJ addressed Dr. Hood's opinion and records as follows:

> Although the claimant alleges quite debilitating mental and physical symptoms, the evidence of record indicates that medication helped the claimant's symptoms significantly.  For example, treatment notes of Dr. Hood, dated April 6, 2012, show that the claimant reported neck pain at a level of eight on a scale of one to 10 without medication and at a level of one on a scale of one to 10 with medication (Exhibit 6F).  On May 29, 2012, Dr. Hood noted that the claimant reported neck pain at a level of eight on a scale of one to 10 without medication and at a level of one on a scale of one to 10 with medication, as well as help with anxiety from Xanax (Exhibit 6F).  Treatment notes of Dr. Hood, dated August 2, 2012, show that the claimant complained of chronic pain in her knee and neck at a level of 10 on a scale of one to 10 without medication and at a level of four on a scale of one to 10 with medication (Exhibit 6F).  Dr. Hood noted that the claimant stated that Lortab helped, Xanax helped with her anxiety, and Adderall calmed her down (Exhibit 6F).  Treatment notes of Dr. Hood, dated September 27, 2012, show that the claimant reported pain at a level of eight on a scale of one to 10 without medication and at a level of one on a scale of one to 10 with medication (Exhibit 7F).  Dr. Hood also noted that the claimant's extremities were "ok" on examination (Exhibit 7F).

. . .

> The undersigned gives little weight to the November 7, 2013 opinion of Dr. Hood that the claimant has pain that is intractable and virtually incapacitating, physical activity, such as prolonged sitting, walking, standing, bending, stooping, moving of extremities, etc., increases the claimant's pain to such an extent that bed rest and/or medication is necessary, and the claimant will be totally restricted and thus unable to function at a productive level of work due to side effects of prescribed medication (Exhibit 13F). First, the record does not contain treatment notes from Dr. Hood for more than one year. Furthermore, despite Dr. Hood being a treating source, his opinion is not supported by the medical evidence of record, including his own treatment notes, dated September 27, 2012, showing that the claimant reported pain at a level of eight on a scale of one to 10 without medication and at a level of one on a scale of one to 10 with medication and had extremities that were "ok" on examination, as well as the September 4, 2012 treatment notes of Dr. Petit showing that claimant had spasmodic pain in her upper right trapezius area, but was alert and oriented times three with a full range of motion of her neck (Exhibits 7F and 9F).

(Tr. at 27, 28).

On November 7, 2013, Dr. Hood completed a Clinical Assessment of Pain on behalf of the plaintiff, in which he stated that "[p]ain is present and found to be intractable and virtually incapacitating to this individual." (Tr. at 414). He also opined that "physical activity, such as prolonged sitting, walking, standing, bending, stooping, moving of extremities, etc." could cause the plaintiff's pain to increase "to such an extent that bedrest and/or medication is necessary." (*Id.*)

Dr. Hood determined that, due to the side-effects of pain medication, the plaintiff "will be totally restricted and thus unable to function at a productive level of work." (Tr. at 415).

Dr. Hood has a long history of treatment notes for the plaintiff.  The set of records provided to the ALJ spanned October 2011 to September 2012.  Thus, the records before the ALJ did not contain treatment notes by Dr. Hood for more than a year prior to the November 7, 2013, assessment.  On October 17, 2011, Dr. Hood notes that the plaintiff is experiencing back, neck, and knee pain.  (Tr. at 295).  At her next visit, on December 8, 2011, the plaintiff reports that her pain had been "the same" and that her pain was a "four" on a one to ten scale with medication, but greater than ten without medication.[3]  (Tr. at 296).  The plaintiff followed-up with Dr. Hood again in February of 2012, and stated that her pain was an "eight" without medication, but reduced to a "two" with medication.  (Tr. at 297).  She reported her pain as a "nine" without medication and a "two" with medication during her visit on April 6, 2012.  In May of 2012, she reported her knee pain to be an "eight" without medication but a "one" with medication.  (Tr. at 299).  She reported the same  numerical pain levels for her neck pain.  (*Id.*)  On August 1, 2012, the plaintiff reported her pain to be a "ten" without medication, and a

_____

[3]  All numerical descriptions of pain contained herein are based on a "one-to-ten" numeric pain scale, with one being the lowest and ten being the highest.

"four" with medication.  (Tr. at 300).  On September 27, 2012, she reported pain at an "eight" without medication, and at a "one" with medication.  (Tr. at 301).  The plaintiff did not report any side effects from her pain medication – debilitating or otherwise – in any of these records.  In fact, side-effects are not addressed in the record at all.

The plaintiff received more records from Dr. Hood's office and presented those records to the Appeals Council.  The second set of records spans from May 2013, to April 2014.  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262 (11th Cir. 2007).  It has been established that the Appeals Council considered the new evidence and determined that it was not sufficient to render the ALJ's decision erroneous.  Accordingly, it falls to the court to consider the entire medical record.

On May 6, 2013, the plaintiff reported that her pain is a "nine" without medication, but goes down to a "two" with medication.  (Tr. at 418).  Dr. Hood also notes that the plaintiff's pain is improved with medication and rest.  (*Id.*)  On July 1, 2013, the patient reported pain at a level of "eight" without medication and "one" with medication.  (Tr. at 421).  Dr. Hood again noted that the plaintiff's

pain was improved with medication. (*Id*.) The plaintiff reported to Dr. Hood on August 23, 2013, a pain level of "nine" without medication and "one" with medication. (Tr. at 423). Again, it was noted that her pain improved with medication. (*Id*.) On October 14, 2013, the plaintiff reported that medication helped her pain and that her pain was a "nine" without medication and a "two" with medication. (Tr. at 425). She reported on December 9, 2013, that her pain was a "nine" without medication and a "two" with medication, and that medication helped her pain. (Tr. at 429). On February 4, 2014, the plaintiff reported the same pain levels and confirmed that her pain was helped with medication. (Tr. at 432). She reported the same pain levels again on March 5, 2014, and told Dr. Hood that medication helped her pain. (Tr. 434). She gave the same report to Dr. Hood on April 7, 2014. (Tr. at 437). The plaintiff did not mention any complications or side-effects from her medication in any of the records.

The ALJ's decision to give little weight to Dr. Hood's November 2013 clinical assessment of pain is supported by substantial evidence. Throughout the medical records—both the records supplied to the ALJ and the records supplied afterward to the Appeals Council—the plaintiff consistently reported that her pain was managed with medication and that her pain was, at its highest point, a "four"

when she was taking medication.  On most visits, however, the plaintiff reported a medicated pain level of "one" or "two."  She never mentioned any debilitating side-effects from her medications, nor did she mention to Dr. Hood any inability to properly move, work, or function in the world due to her pain or side-effects from her pain medication.  The ALJ's decision to give little weight to Dr. Hood's November 2013 clinical assessment of pain is supported by substantial evidence because Dr. Hood's own records to not support his evaluation of the plaintiff's condition in the assessment.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. York's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered contemporaneously herewith.

DONE this 16th day of March, 2017.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE